# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

August 25, 2010

Anthony J. Laura
Patton Boggs LLP
One Riverfront Plaza
Newark, New Jersey  07102
    (*Attorney for Plaintiff*)

John L. Shahdanian, II
Thomas Rudolph Kobin
Chasan Leyner & Lamparello, PC
300 Harmon Meadow Boulevard
Secaucus, New Jersey  07094
    (*Attorneys for Defendants Elwell, Prieto, Massaro, Leanza, Town of Secaucus*)

David T. Pfund
Pfund McDonnell, P.C.
139 Prospect Street, 2nd Floor
Ridgewood, New Jersey 07450
    (*Attorney for Defendant Secaucus Municipal Utilities Authority*)

    **RE:**   **Damascus Bakery, Inc. v. Elwell, et al.**
            **Civ. No. 08-1568 (WJM)**

Dear Counsel:

    This is a motion for summary judgment in a Section 1983 case involving the issuance of a construction permit.  Plaintiff Damascus Bakery ("Damascus") brings this action against the Town of Secaucus, the Secaucus Municipal Utility Authority, and several Secaucus officials, alleging substantive due process and equal protection

violations. In short, Damascus alleges that it was subjected to "political maneuvering, stonewalling and corruption," which delayed the issuance of a necessary building permit and effectively caused Damascus to abandon its expansion plans in Secaucus. (Pl.'s Br. 1, 4.) After review of the papers and exhibits submitted with the briefing, Defendants' motion for summary judgment is **GRANTED**. Viewing the evidence in the light most favorable to Damascus, the Court finds that Defendants' behavior does not "shock the conscience" or lack a rational basis, such that it rises to the level of a constitutional violation.

I.   BACKGROUND[1]

Plaintiff Damascus Bakery, a commercial wholesale bakery that produces flat breads, is headquartered in Brooklyn, New York. Plaintiff brings suit against the Town of Secaucus, the Secaucus Municipal Utilities Authority ("SMUA"), and several Secaucus town officials – Dennis Elwell, Vincent Prieto, Vincent Massaro, and Frank Leanza. Defendant Dennis Elwell was the mayor of Secaucus during the time period referenced in Plaintiff's complaint. Defendant Prieto was the town Construction Official, Defendant Massaro was the town Fire Official, and Leanza was Town Attorney. The Town of Secaucus and Defendants Elwell, Prieto, Massaro, and Leanza are referred to collectively herein as the "Secaucus Defendants."

Interested in expanding its operations, Damascus selected a manufacturing site located at 10 Enterprise Avenue in Secaucus, New Jersey and entered into a lease with Hartz Mountain Industries to rent this location on or about March 22, 2007. (Cert. of Thomas R. Kobin ("Kobin Cert."), Ex. 1; Pl.'s Resp. to Secaucus Defs.' Statement of Material Facts ¶¶ 8, 9.)

Soon thereafter, Damascus applied for a zoning certificate from the New Jersey Meadowlands Commission ("NJMC"). (Cert. of Anthony J. Laura ("Laura Cert.") Ex. C.) NJMC coordinates the development of approximately 21,000 acres of land spanning parts of fourteen municipalities, including Secaucus. (Secaucus Defs.' Statement of Material Facts ¶ 19.) On May 15, 2007, Plaintiff's application was granted, and the zoning certificate issued by NJMC specified that "[a]pplication must be made to the Town of

---

[1] The following facts are undisputed unless noted otherwise. The Court reviews such facts in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Secaucus for a building permit."[2] (Kobin Cert. Ex. 9.)

The instant action arises from the building permit approval process in Secaucus. Specifically, Plaintiff contends that it was unfairly subjected to heightened scrutiny, as demonstrated through delays caused by: (1) Defendant Secaucus Municipal Utility Authority's (SMUA) approval of the construction permit; (2) Defendant Vincent Prieto and NJMC's requirement that a fire lane be drawn into the site plans because the facility was going to change to an "H-2 hazard use"; and, (3) Defendant Prieto's request that additional parking spaces be included in Plaintiff's plan since the fire lane reduced available parking. Each allegation will be discussed in turn.

    A.    SMUA's Approval Process

After receiving the zoning certificate from NJMC, Damascus went forward with the process of obtaining the required building permits from Secaucus. Defendant Prieto, the Secaucus Construction Official, informed Damascus that they would need the approval of four Town entities, including the SMUA, before a building permit would be issued. (Kobin Cert. Ex. 14.)

The engineer tasked by SMUA with reviewing the Damascus file received the application in the third week of August 2007. (Aff. of David T. Pfund ("Pfund Aff.") Ex. L at 70: 5-9.) After reviewing the application, this engineer, Glen Beckmeyer, found several deficiencies and notified Plaintiff on September 24, 2007. (Pfund Aff. Ex. Q.) Around this time, Plaintiff changed engineers; however, Plaintiff's new engineer was able to submit a completed application on October 10, 2007. (Pfund Aff. Ex. R.) Following this submission, there was a flurry of correspondence between SMUA and Plaintiff's engineers. (Pfund Aff. Exs. S, T, U, V, W.)

Plaintiff's attorney then wrote to the executive director of the SMUA on November 1, 2007 and asked that Plaintiff be placed on the agenda for the agency's November 5, 2007 monthly meeting. (Pfund Aff. Ex. X.) SMUA stated that it was unable to do so since it was still processing the newly submitted information. (Pfund Aff. Ex. BB, CC.) Ultimately, Plaintiff's application was placed on the agenda for the SMUA's

---

[2] While Secaucus was invited by NJMC to comment on Damascus' pending zoning application after it was filed, Secaucus failed to do so until two weeks after the zoning certificate was issued. (Kobin Cert. Ex. 10.) NJMC responded to the comment letter sent by Defendant Elwell, then Mayor of Secaucus, and rejected his opposition. Secaucus then appealed NJMC's decision to issue the zoning certificate to Damascus, arguing that changing the property's use from a warehouse to a 24/7 manufacturing facility was improper. This appeal was denied by the Appellate Division on November 14, 2008 and NJMC's issuance of the zoning certificate was upheld. (Kobin Cert. Ex. 3.)

December 2007 monthly meeting and was approved on December 3, 2007. (Pfund Aff. Ex. HH.) Plaintiff points to SMUA's refusal to place its application on the November 5th agenda as evincing an intent to obstruct its application.

    B.    <u>Fire Lanes</u>

In September 2007, Defendant Prieto forwarded Plaintiff's plans to the Secaucus Fire Code Official, Defendant Massaro, for his review. (Kobin Cert. Ex. 15.) After examining the plans in light of the site's proposed "High Hazard H-2"[3] use, Defendant Massaro recommended that a fire access lane be included around the building. (Kobin Cert. Ex. 32.) Plaintiff then drew a fire lane into its plans and resubmitted its drawings to NJMC. (Secaucus Defs.' Statement of Material Facts ¶ 60; Pl.'s Resp. to Secaucus Defs.' Statement of Material Facts ¶ 60.) While NJMC issued a revised zoning certificate on January 7, 2008, that certificate was withdrawn by NJMC two days later. NJMC informed Plaintiff that the certificate had been issued in error, since NJMC failed to consult Defendant Massaro before issuance. (Kobin Cert. Ex. 33.) Plaintiff asserts that Massaro's involvement was "odd," since his input was not required for the issuance of building permits. (Pl.'s Mem. 13.)

    C.    <u>Parking Spaces</u>

On January 28, 2008, Prieto notified NJMC that the fire lane, as drawn by Plaintiff and approved by the NJMC, eliminated a number of parking spaces at 10 Enterprise Avenue. (Kobin Cert. Exs. 34-36.) Since Prieto allegedly believed that the neighboring lot, 20 Enterprise Avenue, had an easement to use these affected parking spots, he feared that the fire lanes would impact this lot's zoning compliance. (Kobin Cert. Ex. 34.) NJMC conversely maintained that the easement in question had been terminated. (Kobin Cert. Ex. 35.) In early March, NJMC and Prieto traded letters on the parking issue. (Kobin Cert. 37; Secaucus Defs.' Statement of Material Facts ¶ 68; Pl.'s Resp. to Secaucus Defs.' Statement of Material Facts ¶ 68.) Two days after Prieto's letter, Plaintiff filed the instant suit.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also*

---

[3] While the term "High Hazard H-2" is not explicitly defined by the parties, a report prepared for Plaintiff indicates that this occupancy classification is due to "a potential combustible dust hazard contained within raw material silos from combustible baking products." (Kobin Cert. Ex. 16 at 1.)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477, U.S. at 249; *see also Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.2d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III.   DISCUSSION

Plaintiff's three-count complaint asserts: (1) a Section 1983 claim for violation of substantive due process and equal protection; (2) a violation of the New Jersey Civil Rights Act; and (3) "Respondeat Superior." Plaintiff states that it "unwittingly became the sacrificial pawn in the chess match between [Mayor] Elwell and his Secaucus cronies on one side, and the NJMC and one of its commissioners on the other." (Pl.'s Br. 2.)  The "chess match" lasted during the pendency of Plaintiff's building permit application – from about late July 2007 through the beginning of March 2008, when Plaintiff filed suit.

      A.    <u>Count One – Substantive Due Process & Equal Protection</u>

In Count One, Plaintiff asserts that the Secaucus Defendants and SMUA deprived it of its constitutionally protected right to use and operate the Secaucus facility pursuant to its lease. (Pl.'s Mem. 22.) Plaintiff alleges that Defendants' consideration of Damascus's permit application was arbitrary, irrational and tainted by improper motive in violation of Damascus's right to substantive due process under the Fourteenth Amendment. In addition, Plaintiff contends that Defendants' actions violated its right to equal protection of law under the Fourteenth Amendment. Each claim will be considered in turn.

      1.    *Substantive Due Process*

To establish a substantive due process claim under Section 1983, a plaintiff "must prove that it was deprived of protected property interest by arbitrary and capricious government action." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998). Damascus satisfies the first substantive due process element, since it had a protected property interest in 10 Enterprise Avenue by virtue of its lease. *Assoc. in Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 655 (E.D. Pa. 2003) (citations omitted) ("Use and enjoyment of property are interests protected by substantive due process. ... This interest applies to leaseholds as well as ownership.").

Having easily satisfied the property interest element, consideration of Plaintiff's substantive due process claim then turns on whether Plaintiff was denied this interest by arbitrary and capricious government action. Whether an official's actions or inactions are deemed arbitrary has been assessed by the Third Circuit using a "shocks the conscience" test. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). Although the "shocks the conscience" test is not precise and depends largely on factual context, "[w]hat is clear is that this test is designed to avoid converting federal courts into super zoning tribunals." *Id*. Instead, the Circuit has found conscience-shocking behavior where the misconduct involves "corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties." *Maple Prop., Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005).

"[T]he politics and animosities that often animate local decision-making are not matters of constitutional concern." *Maple Prop.*, 151 F. A'ppx at 180. Here, local officials are not accused of seeking "to hamper development in order to interfere with otherwise constitutionally protected activity at a project site or because of some bias against an ethnic group." *Eichenlaub*, 385 F.3d at 286. Nor do Plaintiffs allege that there has been a virtual taking. *Id*. Instead, Plaintiffs attempt to cast the information requests received and delays incurred as the product of corruption.

Plaintiff maintains that Defendants' consideration of the building permit applications evinces corruption and self-dealing that "shocks the conscience" for the following reasons: (1) Defendant Elwell publicly and recklessly announced that Plaintiff's activities were dangerous without undertaking an independent investigation; (2) Defendant Prieto delayed Plaintiff's application, motivated purely by his political allegience to Elwell and his "own shocking self-interest"; and (3) SMUA was complicit in the improper tactics of the Secaucus Defendants and admitted that they were "working under orders." Plaintiff argues that its substantive due process claim should be considered against the backdrop of the "widespread cronyism and ... deep-rooted culture of corruption in Secaucus that has only recently been brought to light by the much publicized indictment of its highest elected official, former Mayor Elwell." (Pl.'s Mem. 22.)

While Plaintiff discusses allegations of cronyism and corruption throughout its briefing, there is scant admissible record evidence to support its opposition to summary judgment on this point. In particular, Plaintiff relies heavily on a criminal complaint filed against Defendant Elwell in the District of New Jersey to argue that the permit issuance process in Secaucus was fueled by bribery and graft. (Pl.'s Mem. 4.) ("According to the Criminal Complaint against Elwell, political support for real property development in Secaucus was available to those willing to pay for it."). Evidence derived from this criminal complaint, however, is hearsay, and "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *See Smith v. Allentown*, 589 F.3d 684, 693-94 (3d Cir. 2009). Plaintiff offers no argument for the admissibility of these hearsay statements on a motion for summary judgment, nor could the Court find a hearsay exception applicable in this instance. As such, the criminal complaint and the statements submitted by Plaintiff therefrom cannot be considered by the Court for the purposes of this motion. The same holds true for those allegations contained in a civil complaint filed in the case of *Gonnelli v. Twp. of Secaucus*.[4] Accordingly, the allegations derived from these two inadmissible exhibits regarding the "back door" in Trenton and Elwell's boasts regarding issuing zoning variances for bribes may not be considered by the Court in opposition to the motion for summary judgment, since there is no independently admissible record evidence regarding these points.

The remaining record evidence does not support the finding of a substantive due process violation. Plaintiff asks the Court to assume that it encountered corrupt township

---

[4] In this unrelated civil action, Plaintiff Gonnelli, a former Township of Secaucus employee and member of the NJMC, alleges that he was harassed by several individuals, including Defendant Elwell, after his refusal to vote for a development project that Defendant Elwell supported. (Laura Cert. Ex. D.) The allegations in this complaint are offered for their truth and do not fall under any hearsay exception.

7

officials and an atmosphere conducive to bribery.  For example, Plaintiffs claim that they got the impression from two SMUA employees that they were "sympathetic to what was going on" with Plaintiffs and that they were "working under orders."[5] (Laura Cert. Ex. J at 73: 3-22) (deposition testimony of Plaintiff E. Mafoud).  The evidence in the record on this issue, however, fails to create an issue of material fact.  Mafoud does not testify that he was explicitly told by these officials that his application was being subjected to inordinate scrutiny.  Instead, Mafoud's testimony only speaks to his nebulous impressions and vague recollections about what was said.  *See Bezerra v. DeLorenzo*, Civ. No. 07-5670, 2010 WL 2667185, at *10 (D.N.J. Jun. 23, 2010) (finding plaintiff's testimony as to his "general feeling" that defendant was soliciting a bribe insufficient to shock the conscience).  These allegations regarding Mafoud's impressions from this meeting in his deposition are insufficient to demonstrate a "level of corruption or self-dealing which is so egregious that it shocks the judicial conscience for the purposes of a substantive due process violation."  *Id.*

Further, Elwell's public comments regarding potential safety hazards posed by the construction of an industrial bakery in a residential neighborhood, even viewed in the light most favorable to Plaintiff, do not shock the conscience.  Plaintiff points to no case law or record evidence demonstrating that such comments, even if made without sufficient factual support, evidence corruption or self-dealing or other conscience-shocking behavior on their face tantamount to a substantive due process violation.

Even considering these comments with Defendant Prieto's alleged self-interest fails to elevate Plaintiff's allegations to the level of a constitutional violation.  Plaintiff alleges that Prieto's admission that he is "political friends" with Mayor Elwell, coupled with his living a "block and change" from the proposed bakery site demonstrates "self-interest ... shocking to the conscience in that it led to the arbitrary, unauthorized and unreasoned actions" taken. (Pl.'s Mem. 28-29.)  Plaintiff points to no record evidence,

---

[5] In his deposition, Edward Mafoud provided the following account of a meeting with certain SMUA officials:

> Edward Mafoud: "Among other things, I remember one of them [SMUA officials] – I believe Mr. Bigler in particular – making a remark to us.  I kind of think he felt sympathetic to what was going on.  I say 'sympathetic.' ... Basically – well, a remark was made by him that we are, more or less, working under orders."
>
> Question: What, exactly, did he say?
>
> Edward Mafoud: I would say – almost in those words.  I don't remember exactly the words..."

(Laura Cert. Ex. J at 73: 9-13, 21-25) (Dep. of Edward Mafoud).

however, connecting Prieto's "political friendship" with Elwell to consideration of the Damascus permit application. Instead, Plaintiff points to two occurrences to argue that the Secaucus Defendants were corruptly controlling the permit application process: (1) Prieto's attendance at a New Jersey Department of Community Affairs meeting in Trenton with Elwell in late 2007 during which the Damascus application was discussed (Laura Cert. Ex. G at 217: 19-221:11) and (2) an email from NJMC's executive director, Robert Ceberio, asking that Plaintiff's revised zoning certificate be held until Ceberio could call the mayor**.** (Kobin Cert. 33; Laura Cert. Ex. X.)  Even giving Plaintiff every factual inference to which it is entitled, speculation regarding meetings in Trenton and an email saying that the permit application is being shown to the mayor invites conjecture but offers nothing concrete to create a genuine issue of material fact regarding the motives behind Defendants' consideration of the permit application.  Speculation and conjecture cannot defeat a motion for summary judgment.  *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005); *see also Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")  Plaintiff baldly states that Prieto's actions "exposed his unyielding and shocking loyalty to Elwell's mandate" without pointing to any admissible record evidence either demonstrating this mandate or its connection to this particular permit application.

     Plaintiff also argues the Secaucus Defendants' failure to disclose the "fatal" fire lane and parking issues from Damascus for more than three months "raises the inference, if not the conclusion, that they did so for the sole purpose of delaying" the construction application.  (Pl.'s Br. 30.)  Accepting this allegation as true, it still would not amount to behavior that "shocks the conscience"; instead, such behavior would demonstrate a bad-faith violation of state law, not a constitutional violation.  *See Highway Materials, Inc. v. Whitemarsh Twp.*, 2010 WL 2680996, at *5 (3d Cir. Jul. 7, 2010) ("Even if the purported deficiencies in [plaintiff's] proposal were 'spurious,' and the Township intentionally refused to cooperate with [plaintiff], the most that can be proven is a bad-faith violation of state law, which does not meet the [shock the conscience] standard.").

     Plaintiff's claim regarding SMUA fails for the same reasons.  Although Plaintiff casts the delays experienced in the consideration of its application as evidence of SMUA's complicity in the Secaucus Defendants' actions, the evidence in the record evinces no disputed issues for trial.  Again, even accepting Plaintiff's contention that the information requests were unnecessary and demonstrated an uncooperative attitude by SMUA, such behavior does not meet the shock the conscience standard.  *Id.*  Instead, Plaintiff demonstrates, at most, that SMUA acted in bad faith.  It is clear, however, that a showing of bad faith, in and of itself, is not sufficient to shock the conscience and give rise to constitutional violation.

For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate the existence of genuine issues of material fact regarding the substantive due process claim and that Defendants are entitled to judgment as a matter of law. Accordingly, the substantive due process claim in Count One is dismissed as to all Defendants.

2.   *Equal Protection*

Plaintiff Damascus also brings an equal protection claim, alleging that its permit application was treated differently from those filed by similarly situated businesses in Secaucus. Plaintiff states that Defendants Prieto and Massaro never reviewed parking requirements or fire lane placement for these other permit applicants, Daisy Bakery and H&H Bagels. Accordingly, Plaintiff asserts that the Secaucus Defendants' inquiries as to the Damascus application were "selectively aimed at Damascus and are arbitrary, capricious, and tied to no legitimate government interest." (Pl.'s Br. 40.)

Plaintiff does not bring its equal protection claim as a member of a protected class; instead, it brings a "class of one" claim. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (allowing individuals to bring equal protection claims, not as members of a protected class, to guard against "intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by improper execution through duly constituted agents."). To assert a successful equal protection "class of one" claim, a plaintiff must demonstrate that: (1) it "has been intentionally treated differently from others similarly situated," and (2) "there is no rational basis for the difference in treatment." *Id.* Such a challenge fails when "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

Plaintiff contends that it is similarly situated with H&H Bagels and Daisy Bakery but offers nothing to substantiate this assertion. Instead, Plaintiff offers copies of the construction permit issued to H&H Bagels and the certificate of occupancy issued to Daisy Bakery for a site located at 35 UPS Drive in Secaucus. (Laura Cert. Exs. U, HH.) The similarities between Plaintiff's application for 10 Enterprise Avenue and this 35 UPS Drive site are not explained in the briefing. Beyond the assertion that baking occurs at each facility, there is nothing in this record to demonstrate that Plaintiff, H&H Bagels, and Daisy Bakery "are alike in all relevant aspects." *Mun. Revenue Serv., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009). As such, Plaintiff has failed to identify any genuine issues of material fact in dispute, and as such, the equal protection claim is dismissed.

B.   <u>Count Two – New Jersey Civil Rights Act</u>

Plaintiff next asserts a violation of the New Jersey Civil Rights Act. This statute

provides, in pertinent part:

> Any person [1] who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or [2] whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10: 6-2(c). As discussed above, there is no material fact in dispute that could lead a reasonable juror to conclude that Defendants' behavior "shocked the conscience" or was "wholly arbitrary and irrational." Thus, Plaintiff failed to carry its burden of demonstrating the existence of a substantive due process or equal protection claim. Further, there is no record evidence properly before this Court to substantiate the second element of an NJCRA violation. Plaintiffs present no genuine factual questions as to "threats, intimidation or coercion" by Defendants. Accordingly, this claim is dismissed.

### C.  Count Three – Respondeat Superior

Finally, Plaintiff seeks to hold the Township of Secaucus liable for the actions of the individual defendants and SMUA under a theory of Respondeat Superior. As a threshold matter, vicarious liability is unavailing in the Section 1983 context, as "a defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) (recognizing that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor") (citing *Monell v. New York City Dep't Soc. Serv.*, 436 U.S. 658, 690-94 (1978)).

Plaintiff maintains here, however, that the complaint asserts a municipal liability claim under *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Municipal liability generally is premised on a municipal policy or custom that results in a constitutional deprivation to Plaintiff. *See, e.g., id.* at 694. Here, however, the Court has found that Plaintiff has failed to identify a genuine issue of fact in dispute for trial on Plaintiff's constitutional deprivation claims. Thus, on this basis alone, Plaintiff's *Monell* claim against the Town of Secaucus may be dismissed.

Even assuming the existence of an underlying constitutional violation, Plaintiff's municipal liability claim does not withstand summary judgment. Plaintiff premises its theory of municipal liability on the notion that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government entity is responsible

under 1983." Pl.'s Mem. 45 (quoting *Monell*, 436 U.S. at 694).  Review of the record evinces no evidence properly before the Court of the execution of an "official municipal policy."

Further, the "edicts" and acts alleged by Plaintiff are derived from the *Elwell* criminal complaint and the *Gonnelli* civil complaint, both of which may not be considered by the Court on this motion for the reasons set forth above. Plaintiff also offers an additional hearsay statement from "a principal of a Secaucus-based carting business." (Pl.'s Br. 10, 45.)  This statement likewise is hearsay not subject to any exception.  This carting business principal allegedly told Edward Mafoud, one of Plaintiff Damascus's principals, that Elwell told him that Damascus "would never get into that particular site," presumably 10 Enterprise Drive in Secaucus.  (Laura Cert. Ex. J at 66: 1-19) (Dep. of E. Mafoud.)  This statement is being offered for its truth – that the Secaucus Defendants were obstructing Damascus's ability to obtain a permit.  As the Third Circuit recently held in *Smith v. Allentown*, "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." 589 F.3d 684, 693 (3d Cir. 2009) (affirming trial court's refusal to consider double hearsay statement offered by Plaintiff and dismissing claim where no independent basis evident for admission of statement). Since Plaintiff has offered no basis upon which to find this statement admissible at trial, the Court cannot consider it.  Without this statement, Plaintiff points to nothing in the record that may be weighed on summary judgment to create a genuine issue of material fact.[6]  Accordingly, Count Three is dismissed.[7]

## IV.   CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by Defendants Elwell, Prieto, Massaro, Leanza, Town of Secaucus, and Secaucus Municipal Utilities Authority are **GRANTED**.  This matter is hereby dismissed.  An Order follows this Letter

---

[6] Plaintiff also offers the deposition testimony of David Mafoud, another Damascus principal.  In his deposition, David Mafoud stated that Jim Johnson, one of Secaucus's attorneys, allegedly said at a meeting in June 2008 that "[w]e want Damascus ... let them pick any site other than that site." (Laura Cert. Ex. DD at 162:1 - 163:16, 439:19-20.) (Dep. of D. Mafoud.)  David Mafoud concedes that this statement was made several months after this action was filed and thus, after the time frame referenced in Plaintiff's complaint.  (*Id.* at 163: 21-22.)  Thus, this statement does not create a genuine issue of fact regarding the consideration of Plaintiff's application during the fall and early winter of 2008.

[7] Defendants raise other grounds for dismissal of Counts One, Two, and Three in their briefing, including failure to exhaust administrative remedies and qualified immunity; however, since the Court is granting Defendants' motion for summary judgment in its entirety, it is unnecessary to reach these additional arguments.

Opinion.

       /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**